**Filed 12/20/96**
FOR THE TENTH CIRCUIT

JAMES GIBSON,

      Appellant,

v.

VITO ROTUNNO, JR.; JOAN
ROTUNNO,

      Appellees.

No. 96-4076
(D.C. No. 95-CV-28)
(D. Utah)

ORDER AND JUDGMENT*

Before PORFILIO, ALARCON,** and LUCERO, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

\*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\*     Honorable Arthur L. Alarcon, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

Appellant James M. Gibson (Gibson) appeals from an order of the district court affirming a bankruptcy court judgment against him.  We affirm.

I.

Appellees Vito Rotunno, Jr. and Joan Rotunno[1] (Rotunnos) filed this adversary proceeding against Gibson and Janet Henel, trustee of the Gibson Family Trust (Trust).  The Rotunnos contended that Gibson fraudulently induced Vito Rotunno to execute a contract (the "1986 Agreement") to sell Gibson and the Trust his interest in the debtor, I.A. Corporation (I.A. Corp.).  Their complaint requested, among other things, rescission of the 1986 Agreement, damages for breach of contract, and determination of ownership of I.A. Corp.  Gibson counterclaimed for return of alleged overpayment on the 1986 Agreement.

After an extended trial, the bankruptcy court rescinded the 1986 Agreement on grounds of fraud and breach of contract.  It awarded Gibson and the Trust restitution of $92,800, but offset this amount by $20,800 discovery sanctions owed by Gibson and the Trust and an additional $72,050 for reduction in value on

---

[1]     Joan Rotunno, Vito Rotunno's ex-wife, purchased all of Vito Rotunno's rights to this action from his bankruptcy trustee.  The bankruptcy court therefore entered its final judgment in favor of Joan Rotunno.

a note which it determined should have accrued to Vito Rotunno, for a net award to Joan Rotunno from Gibson and the Trust of $50. It declared that upon rescission, neither the Trust nor Gibson had any interest in the debtor. It further dismissed Gibson's counterclaim, and awarded attorney's fees and costs against the defendants.[2]

## II.

"In reviewing a district court's decision affirming the decision of a bankruptcy court, this court applies the same standards of review which governed the district court. The bankruptcy court's findings of facts will be rejected only if clearly erroneous. Its conclusions of law, however, are reviewed *de novo*." Broitman v. Kirkland (In re Kirkland), 86 F.3d 172, 174 (10th Cir. 1996)(further citations omitted). We apply California law to interpretation of the 1986 Agreement, as provided therein.

---

[2] Prior to the filing of this action, Gibson created the Trust and transferred all of his assets into it, including his rights under the 1986 Agreement. During the pendency of this action, he filed a personal bankruptcy petition. Therefore, the bankruptcy court in this action initially entered judgment only against the Trust. It certified this judgment as final, the Trust appealed to the district court, and its appeal was dismissed. Relief from the automatic stay was then granted against Gibson, and the bankruptcy court entered final judgment against him, as well.

III.

Gibson first argues that neither the bankruptcy court nor the district court had jurisdiction over this proceeding. 28 U.S.C. § 1334(b) grants federal district courts "original but not exclusive jurisdiction of all civil proceedings . . . arising in or related to cases under Title 11." The statutes further provide that the bankruptcy court has jurisdiction to enter final judgment in such "related" matters with consent of the parties. See 28 U.S.C. § 157(c)(2).

The parties, including Gibson, gave their consent to entry of judgment by the bankruptcy court. Gibson argues, however, that his consent did not confer jurisdiction and that he is therefore free to raise lack of jurisdiction on appeal. He contends that this proceeding is not sufficiently "related to" I.A. Corp.'s Chapter 11 reorganization to fall within § 1334(b). We disagree. A proceeding is "related to" a bankruptcy, "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate." Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990)(discussing former 28 U.S.C. § 1471(b)). The outcome of this proceeding determined the ownership

of the debtor, I.A. Corp., and therefore had a direct impact on its liabilities and administration of its estate.[3]

IV.

Gibson next argues that the bankruptcy court erred in determining that upon rescission, neither he nor the Trust[4] holds any further interest in I.A. Corp. Gibson contends that the Trust holds an original 50% interest in I.A. Corp., independent of the interest he sought to purchase from Vito Rotunno.

The bankruptcy court's findings on this issue may be summarized as follows. I.A. Corp. was organized as a successor to Park City Limited (PCL), a

---

[3]    Gibson argues that since I.A. Corp.'s Plan of Reorganization cancels the ownership interests of interest holders, it is unnecessary to determine who these interest holders were. However, the Plan provides the former interest holders with certain rights and entitlements to distributions. Appellant's App., tab 1 at 12, ¶ 5.9. The trustee needed to know who the owners of the canceled interests were in order to properly administer the Plan.

[4]    Appellees argue that Gibson lacks standing to raise this issue, because the Trust, not Gibson, owned the interest in PCL, and hence, any resulting interest in I.A. Corp. belonged to the Trust, not Gibson. Gibson, conversely, argues that since the interest belonged to the Trust, he could not alienate it. The bankruptcy court found that both Gibson and Janet Henel, trustee of the Trust, ignored the separate existence of the Trust in Gibson's business dealings, that PCL's assets were in fact transferred to I.A. Corp., and that the agreement provided that Gibson (not the Trust) was to receive the shares in I.A. Corp. after the $400,000 was paid. Neither party has shown that these findings are clearly erroneous. If they were, Gibson would lack standing to raise this issue, and the result would be the same as that reached here: affirmance of the district court as to this issue. Cf. generally Restatement (Second) of Trusts § 280 (1959), comments e and j (trustee is proper party to seek rescission of transaction involving trust property).

partnership in which Gibson owned a fifty percent share. PCL's assets were transferred to I.A. Corp. The owners of PCL agreed that Gibson would receive a fifty percent share in I.A. Corp., but not until he repaid $400,000 which he owed to PCL. Since he never repaid the money, he never became a shareholder of I.A. Corp.

Gibson has failed to show that these findings of fact are clearly erroneous. He contends, however, that the agreement to forego his shares in I.A. Corp. until he repaid the debt was unsupported by consideration. We disagree. Gibson promised to wait to receive his shares until he had made repayment, and the shareholders promised to reserve a fifty percent interest for him. These promises served as consideration for each other. See Bleecher v. Conte, 698 P.2d 1154, 1156 (Cal. 1981)(mutual promises in consideration of each other form bilateral contract). We do not inquire into the adequacy of that consideration. See Harris v. Time, Inc., 237 Cal. Rptr. 584, 587-88 (Cal. Ct. App. 1987).

V.

Gibson next argues that the Rotunnos were not entitled to rescission because they were unable to restore the benefits which they received under the 1986 Agreement. Gibson's argument is moot in light of the bankruptcy court's ultimate judgment. Vito Rotunno received only money under the contract. The

-6-

bankruptcy court offset his obligation to restore this money by Gibson's own obligations to the Rotunnos, to arrive at a net amount due from <u>Gibson</u> of $50. Such offsets are permitted in rescission cases. <u>See</u> <u>Runyan v. Pacific Air Indus., Inc.</u>, 466 P.2d 682, 685-86 (Cal. 1970)(en banc). Where the plaintiff has been damaged by defendant in excess of the amount received, it is unnecessary for the plaintiff to restore the sums received under the contract to obtain rescission. <u>See</u> <u>Peterson v. Wagner</u>, 198 P. 25, 29 (Cal. Ct. App. 1921).

## VI.

Gibson takes issue with the offsets ordered by the bankruptcy court. He contends the Rotunnos were not entitled to damages for diminished value of the "Stroup note." The Stroup note was an obligation owed to Salt Lake City, Ltd. (SLCL), a limited partnership. Vito Rotunno sold his fifty percent interest in SLCL to Gibson as part of the 1986 Agreement. The bankruptcy court found that after the sale, Gibson received and endorsed payments under the Stroup note, and that he later forgave the balance of the Stroup note.[5] It found that the total

---

[5] Gibson argues that forgiveness of the debt was a reasonable business decision, for which he should not be penalized. He asserts that the obligor had filed bankruptcy in 1983 and was insolvent at the time the debt was forgiven. The bankruptcy court noted that the obligor made payments on the Stroup note to Gibson in 1986, 1988 and 1989. It found that Rotunno would have been able to receive at least $72,050 on the note, if the 1986 Agreement had not been

(continued...)

benefit received by Gibson on the Stroup note was $144,100, half of which ($72,050) it allocated to the Rotunnos as damages.

Gibson argues that he could not be held liable to the Rotunnos for this sum, because the Stroup note belonged to SLCL, not the Rotunnos. This argument ignores the Rotunnos' fifty percent interest in SLCL. Since rescission was ordered, Gibson had to return the interest in SLCL to the Rotunnos; however, that interest had been diminished by the reduction in value of the Stroup note, which was attributable to Gibson. Where the defendant in a rescission action cannot restore the full value of the property he has received, the court has the power to award consequential damages in order to provide complete relief to the plaintiff. See Cal. Civ. Code § 1692 (West 1982). The bankruptcy court properly awarded damages in proportion to Rotunnos' interest in SLCL.

Gibson next argues that the bankruptcy court could not use discovery sanctions to offset amounts due from the Rotunnos. He cites no authority for this proposition, and we have found none. Section 1692 allows the court to "adjust the equities between the parties." Given the permissive nature of § 1692's statutory language, we review the district court's adjustment of the equities for abuse of discretion. Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165,

---

[5](...continued)
executed. Gibson has failed to show that these findings are clearly erroneous.

174 (9th Cir. 1989). The bankruptcy court did not abuse its discretion in ordering the offset, considering the broad power granted under the statute.

Finally, Gibson argues that the discovery sanctions were unsupported by proper findings. As this argument was not raised in the district court, we do not consider it here. See Walker v. Mather (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992).

VII.

Gibson next argues that Vito Rotunno breached the 1986 Agreement in two respects and was therefore not entitled to rescission. He argues that Rotunno pledged the proceeds due him from the sale of his interest in I.A. Corp. to secure a loan from William Stuart. The bankruptcy court found that the pledge did not encumber the underlying assets and therefore did not breach the 1986 Agreement. Gibson has not shown that this finding is clearly erroneous.

Gibson now presents a transcript of judgment showing that Stuart purportedly obtained a judgment against I.A. Corp. after Rotunno failed to pay the underlying obligation. Gibson fails to show, however, that this transcript of judgment ever was made part of the record before the bankruptcy court; we therefore do not consider it. Cf. Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.), 798 F.2d 396, 399 (10th Cir.

1986)(appellate court reviewing bankruptcy court decision may not receive new evidence).

Gibson next argues that Rotunno failed to prepare and deliver an $850,000 promissory note from I.A. Corp. to Rotunno to evidence the debt owed to Rotunno by I.A. Corp. and assigned by him to Gibson under the 1986 Agreement. This argument is raised for the first time on appeal, and so we do not consider it. See Walker, 959 F.2d at 896. Gibson argues in his reply brief, however, that the argument should be considered in order to prevent a miscarriage of justice. See Tele-Communications, Inc. v. Commissioner, 12 F.3d 1005, 1007 (10th Cir. 1993). We disagree. Gibson does not state any compelling reason for his failure to raise this argument before the district court. Even if he is correct in his assertion that Rotunno failed to prepare and deliver the note, Gibson also has not shown that this alleged failure constituted a material breach of the contract.

## VIII.

Finally, Gibson argues that the bankruptcy court erred in awarding attorney's fees to Rotunno. He contends that the 1986 Agreement allows the prevailing party attorney's fees only in actions for enforcement and interpretation, not rescission. The bankruptcy court gave three reasons for awarding attorney's fees: (1) attorney's fees were required to afford complete relief to the Rotunnos;

(2) the principle of reciprocity required the award of attorney's fees for rescission because the contract called for attorney's fees for its enforcement; and (3) attorney's fees are available in an action for fraud in the inducement. We have reviewed the authorities upon which the bankruptcy court relied, and conclude that it did not abuse its discretion in awarding attorney's fees to the Rotunnos.

IX.

The judgment of the United States District Court for the District of Utah is AFFIRMED. Appellant's motion to supplement the record on appeal is DENIED.

Entered for the Court


John C. Porfilio
Circuit Judge